UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEPHANIE ARLENE TSOUVAS,

                Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

No.  2:13-cv-0099 AC

ORDER

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act.  The parties' cross motions for summary judgment are pending.  For the reasons discussed below, the Court will grant in part plaintiff's motion for summary judgment, and will deny defendant's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

        Plaintiff filed an application for DIB and SSI on November 16, 2009, alleging disability beginning on March 13, 1990[1].  Administrative Record ("AR") 140-47, 148-54.  Plaintiff's

---

[1] At the administrative hearing, the administrative law judge and plaintiff spoke of May 3, 2009 as the alleged onset date.  See Administrative Record at 31-32.

1

applications were denied initially and again upon reconsideration.  AR 81-84, 90-94.  On April 19, 2011, a hearing was held before administrative law judge ("ALJ") Christopher Trevor Skarda. AR 25-73.  Plaintiff appeared with attorney representation at the hearing, at which she and a vocational expert testified.  See id.  In a decision dated May 27, 2011, the ALJ found plaintiff not disabled.  AR 7-24.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2.   The claimant has not engaged in substantial gainful activity since May 3, 2009, the alleged onset date.
>
> 3.   The claimant has the following severe impairment: Degenerative disc disease, obesity, generalized anxiety disorder, and depression.
>
> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to simple routine repetitive tasks; occasional push or pull with upper and lower extremities; occasional climbing, occasional stooping, crouching, crawling, and kneeling.
>
> 6.   The claimant is unable to perform any past relevant work.
>
> 7.   The claimant was born on xx/xx/1969 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8.   The claimant has a limited education and is able to communicate in English.
>
> 9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has the transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 3, 2009, through the date of this decision.

AR 10-19.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council

2

1  denied review on November 23, 2012, leaving the ALJ's decision as the final decision of the

2  Commissioner of Social Security.  AR 1-3.

3  <center>FACTUAL BACKGROUND</center>

4        Born on xx/xx/1969, plaintiff was 39 years old on the alleged onset date of disability

5  and 41 years old at the time of the administrative hearing.  Plaintiff held many previous positions,

6  including working part-time as a front desk clerk and night audit clerk at a hotel.  AR 34-35.  She

7  was fired from that position because she complained about her boss's behavior towards other

8  employees; she was not fired because of her disability.  AR 35, 37.  In her most recent job,

9  plaintiff worked as an admissions coordinator for a nursing home, but she was unable to maintain

10  a full-time schedule "because it was very difficult to work."  AR 37.

11  <center>LEGAL STANDARDS</center>

12        The Commissioner's decision that a claimant is not disabled will be upheld if the findings

13  of fact are supported by substantial evidence in the record and the proper legal standards were

14  applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

15  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

16  180 F.3d 1094, 1097 (9th Cir. 1999).

17        The findings of the Commissioner as to any fact, if supported by substantial evidence, are

18  conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

19  more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

20  Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

21  conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

22  N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

23  substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

24  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

25        Although this court cannot substitute its discretion for that of the Commissioner, the court

26  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

27  evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of Health and

28  Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th

<center>3</center>

1    Cir. 1985).

2         "The ALJ is responsible for determining credibility, resolving conflicts in medical

3    testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

4    (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

5    one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.

6    Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons

7    stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

8    rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d

9    871, 874 (9th Cir. 2003).

10        The Court will not reverse the Commissioner's decision if it is based on harmless error,

11   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

12   ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

13   2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

14   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

15                                            ANALYSIS

16        Plaintiff seeks summary judgment on the grounds that (1) the ALJ erred by failing to

17   provide any proper rationale for discounting her subjective complaints and credibility, (2) the

18   ALJ erroneously discounted the assessments of all three treating doctors who offered opinions in

19   this case; (3) the ALJ failed to properly consider the lay evidence of record; and (4) the ALJ erred

20   by failing to rely upon the vocational expert testimony rendered in response to a complete

21   hypothetical question.  The Commissioner, in turn, argues that the ALJ's decision is supported by

22   substantial evidence and is free from legal error.

23   A.    Plaintiff's Subjective Complaints and Testimony

24        1.    Legal Standards

25        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts

26   in the medical evidence.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the

27   medical evidence in the record is not conclusive, "questions of credibility and resolution of

28   conflicts" are solely the functions of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.

1   1982).  In such cases, "the ALJ's conclusion must be upheld."  Morgan, 169 F.3d at 601.  "The

2   Commissioner's decision to deny benefits will be overturned 'only if it is not supported by

3   substantial evidence or is based on legal error.'"  Id. at 599 (citing Magallanes v. Bowen, 881

4   F.2d 747, 750 (9th Cir.1989) (quoting Green v. Heckler, 803 F.2d 528 (9th Cir.1986))).

5        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

6   reasons for the disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  The ALJ "must

7   identify what testimony is not credible and what evidence undermines the claimant's complaints."

8   Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence

9   shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must

10  be "clear and convincing."  Lester, 81 F.2d at 834.

11       In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

12  credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

13  symptoms, and other testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273,

14  1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

15  physicians and other third parties regarding the nature, onset, duration, and frequency of

16  symptoms.  See id.

17       2.    Analysis

18       The ALJ concluded that "claimant's medically determinable impairments could

19  reasonably be expected to cause the alleged symptoms; however, the claimant's statements

20  concerning the intensity, persistence and limiting effects of these symptoms are not credible to the

21  extent they are inconsistent with the above residual functional capacity assessment."  AR 17-18.

22  In making an adverse credibility determination, the ALJ failed to present any affirmative

23  evidence that plaintiff was malingering and was thus required to present "clear and convincing"

24  reasons for rejecting plaintiff's testimony.  Lester, 81 F.2d at 834.

25       The ALJ's determination was based on the following three reasons: (1) there existed an

26  unresolved discrepancy in plaintiff's alleged onset date; (2) plaintiff stopped working because she

27  was fired, not because of her alleged impairments; and (3) the evidence established that plaintiff

28  was capable of performing a variety of household work.  AR 14.  Because the Court finds that at

1   least one of these reasons is adequate for discrediting plaintiff, the Court finds no error in the

2   ALJ's credibility analysis.

3               a.       Alleged Onset Date

4        The ALJ first noted that in plaintiff's "Adult Disability Report dated November 19, 2009,

5   the claimant alleged degenerative disc disease with lumbar radiculopathy as the impairments that

6   caused her to be unable to work beginning on March 3, 1990, the alleged onset date [Exhibit 5E].

7   However, the claimant subsequently indicated last working on May 3, 2009." AR 14.  While the

8   ALJ does not explicitly say so, it appears that this discrepancy is used as a basis for finding

9   plaintiff not trustworthy.  But the inference that plaintiff's amendment of her onset of disability

10  date somehow demonstrates that she was being less than truthful about the severity of her

11  limitations was improper, particularly since the Social Security regulations themselves anticipate

12  changes to the onset date.[2]  See Titles II & XVI: Onset of Disability, 1983-1991 Soc. Sec. Rep.

13  Serv. 49 (S.S.A 1983) ("A change in the alleged onset date may be provided in a Form SSA-5002

14  (Report of Contact), a letter, another document, or the claimant's testimony at a hearing.").

15              b.       Reason for Termination of Employment

16       The ALJ's second reason for discrediting plaintiff was that plaintiff "stopp[ed] work due

17  to being fired not due to her alleged impairments [Exhibit 5E]."  AR 14.  The ALJ may consider a

18  claimant's work history, including the reasons a claimant separated from her employment, in

19  considering her credibility.  Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001).  Because the

20  record supports the ALJ's determination that plaintiff was indeed fired from her position after

21  complaining about her supervisor's behavior rather than due to her impairment(s), see AR 35, this

22  reason for finding plaintiff not entirely credible is supported by substantial evidence.

23       Plaintiff challenges the ALJ's determination, arguing that she informed the ALJ at the

24  hearing that she only worked part time at the hotel, and that it was "a struggle to even do it, so

25  then when he fired me, then that's when Dr. Jones said that I was more likely in denial of trying

26

27  ────────────────
    [2] Moreover, plaintiff's testimony at the administrative hearing clarifies that the 1990 date relates
    to a worker's compensation claim for a back injury, for which she was treated by Dr. Jeff Jones.
28  See AR 49-50.  This claim ultimately settled.  See id. at 50.

1  to keep pushing myself to work when it was too hard." Id.  Plaintiff also argues that the ALJ

2  failed to consider the role of her depression and other diagnoses in his consideration of this issue,

3  and thus, failed to consider plaintiff's combination of impairments when evaluating the situation

4  surrounding plaintiff being fired.  In support, plaintiff refers to various medical records indicating

5  mental impairments that affect her ability to relate to and interact with supervisors, coworkers,

6  and the public.  Plaintiff thus argues that her difficulties with her supervisor could reasonably be

7  related to her mental impairments.

8       While plaintiff's arguments may be a rational interpretation of the record, the evaluation

9  of inconsistencies and consideration of reasons for plaintiff's termination of employment goes to

10  the weight of the evidence and is a determination for the ALJ.  It is the role of the ALJ to assess

11  credibility and weigh the evidence, and "[w]here the evidence is susceptible to more than one

12  rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400

13  F.3d 676, 679 (9th Cir. 2005).  Under this standard, the Court finds no error.

14              c.       Plaintiff's Functional Limitations

15       The ALJ's third reason for discrediting plaintiff was his finding that plaintiff's self-

16  reported daily activities were inconsistent with a disability determination.  Daily activities that are

17  inconsistent with alleged symptoms are relevant in assessing credibility.  Rollins v. Massanari,

18  261 F.3d 853, 857 (9th Cir. 2001).  The ALJ based this finding on evidence indicating that

19  plaintiff could perform various household chores, such as doing her own grocery shopping,

20  carrying a gallon of milk, cleaning her own room, and driving up to 1.5 hours at one time.  See

21  AR 14.

22       The Ninth Circuit, however, has found that the "Social Security Act does not require that

23  claimants be utterly incapacitated to be eligible for benefits," Fair v. Bowen, 885 F.2d 597, 603

24  (9th Cir. 1989), and "disability claimants should not be penalized for attempting to lead normal

25  lives." Reddick, 157 F.3d at 722; Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)

26  (concluding "[d]isability does not mean that a claimant must vegetate in a dark room excluded

27  from all forms of human and social activity."); Fair, 885 F.2d at 603 (finding "many home

28  activities are not easily transferable to what may be the more grueling environment of the

1   workplace, where it might be impossible to periodically rest or take medication.").  But if

2   "claimant is able to perform household chores and other activities that involve many of the same

3   physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that

4   the claimant's pain does not prevent the claimant from working."  Fair, 885 F.2d at 603.

5          Here, the ALJ failed to provide any evidence that claimant's home activities are easily

6   transferrable to a particular type of work that claimant could perform, nor does the ALJ present

7   any evidence that plaintiff can accomplish these tasks in an efficient manner that would be

8   required for employment, and lastly, the ALJ fails to show how these activities undermine

9   plaintiff's symptom testimony.  Furthermore, the record as a whole does not support the ALJ's

10  conclusion.  The ALJ failed to consider the totality of plaintiff's and plaintiff's sister's

11  statements, instead only focusing on the statements that make plaintiff sound the most functional.

12  In one of the Exertional Activity Questionnaires, plaintiff stated "I do not feel like I have a life…

13  as I have to live by whatever/whenever my chronic pain allows."  AR 224.  Plaintiff also

14  indicated that she has difficulty finishing housework; that it takes her a lot longer to get things

15  done and she has "to stop during chores to rest or get relief of pain," and she can only continue

16  "from 15 mins to an hour. . . it all depends on what it is I'm doing as well as how/what my pain

17  level is when I started."  AR 226.  The ALJ failed to address these limitations, instead focusing on

18  the tasks themselves and not the reality of plaintiff doing them.  "In evaluating whether the

19  claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to

20  work on a sustained basis.'"  Lester, 81 F.3d at 833 (quoting 20 C.F.R. § 404.1512(a)) (finding

21  that "[o]ccasional symptom free periods — and even the sporadic ability to work — are not

22  inconsistent with disability").  Therefore, the ALJ failed to provide clear and convincing reasons

23  sufficient to support his conclusion that plaintiff's ability to perform basic household chores is

24  inconsistent with plaintiff's disability claims.

25         Although the Court has found it was error to discount plaintiff's credibility based on the

26  change in plaintiff's alleged onset date and consideration of her functional limitations, the ALJ

27  relied on at least one adequately supported reason.  Accordingly, the Court finds substantial

28

1    evidence to support the ALJ's credibility determination. [3]

2    B.    Opinion Evidence

3            As treating physicians, the opinions of primary care physician Jeff Jones, MD; HIV

4    treating physician Karen Mark, MD; and treating psychiatrist Jeffrey Gerstein, MD, would

5    ordinarily be accorded controlling weight.  However, the ALJ refused to grant these opinions

6    such weight and instead favored the opinions of examining physicians, including Nasra Haroun,

7    MD, an examining psychiatrist who evaluated plaintiff once on February 12, 2010; Matthew D.

8    Johnson, DO, an examining physical medicine and rehabilitation physician who evaluated

9    plaintiff once on January 31, 2010; and Randy Kolin, PsyD, an examining psychologist who

10   evaluated plaintiff once on July 22, 2010.[4]  AR 14-17, 617-22, 641-43, 684-90.  While the ALJ

11   asserted reasons for according "little" or "reduced" weight to the opinions of the treating

12   physicians, the Court finds that the ALJ erred for the reasons discussed below.

13           1.    Legal Standards

14           In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians:

15   (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

16   _____

17   [3] For this reason, the Court declines to consider any additional grounds raised by the
     Commissioner in support of the ALJ's credibility determination.  See Def.'s Cross-Mot. Summ. J.

18   at 19-21.

     [4] The ALJ also referenced a "State agency medical consultant" who completed a Physical

19   Residual Functional Capacity Assessment on February 9, 2010, that "concurred with the findings
     of Dr. Johnson."  AR 15.  However, nowhere on this evaluation or in the record does the name of

20   this physician appear, including in the ALJ's own decision.  AR 15, 625-29.  Furthermore, the
     evaluation is not signed and is lacking the physician's medical consultant code and the date.  AR

21   629.  It is an error for the ALJ to rely on any unsigned medical opinions in making his decision.
     "The regulations identify "acceptable medical sources," such as licensed physicians and licensed

22   psychologists, who can provide evidence to establish an impairment.  Because neither the ALJ
     nor this Court is aware of what health care provider authored the unsigned opinion, it is

23   impossible to determine whether it was written by an "acceptable medical source" as required by
     the regulations."  Hashbarger v. Astrue, C10-1376-RSL, 2011 WL 4404141 (W.D. Wash. July 12,

24   2011) report and recommendation adopted, C10-1376RSL, 2011 WL 4436236 (W.D. Wash. Sept.
     22, 2011) (citing 20 C.F.R. § 404.1513(a)); Bergfeld v. Barnhart, 361 F. Supp. 2d 1102, 1111 (D.

25   Ariz. 2005) (finding that although no Ninth Circuit case had addressed this issue, cases in other
     jurisdictions have interpreted the regulation as preventing the ALJ from considering an unsigned

26   medical report and the "ALJ should not have considered [the physician]'s unsigned report.").
     Therefore, this evidence is unsubstantiated and it should not have been used as evidence in the

27   ALJ's decision.

28

                                                      9

claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830.  Generally, more weight should be given to a treating physician's opinion than to those who do not treat the claimant. Id.  A treating physician's opinion that is given controlling weight "must be adopted." See Social Security Ruling ("SSR") 99–2p ("Giving Controlling Weight to Treating Source Medical Opinions," at ¶ 6).[5]  To accord a treating physician's opinion controlling weight, the opinion must be (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "'not inconsistent' with the other substantial evidence in the case record." See Orn, 495 F.3d at 631. "Not inconsistent" means that "no other substantial evidence in the case record . . . contradicts or conflicts with the opinion"; "substantial evidence" means "more than a mere scintilla" such that a "reasonable mind would accept as adequate to support a conclusion."  SSR 96–7p (Explanation of Terms).

    "If a treating doctor's opinion is not contradicted by another doctor (i.e., there are no other opinions from examining or nonexamining sources), it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record."  See Ryan v. Comm'r of Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008); Lester, 81 F.3d at 830.  "If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); Ryan, 528 F.3d at 1198.[6]  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751.  Furthermore, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions

---

[5] "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009).  The Ninth Circuit gives them deference so long as they do not produce "a result inconsistent with the statute and regulations." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

[6] As to the appropriate standard to apply in this case, the Commissioner appears to argue that the treating physicians' opinions are contradicted by the examining physicians' opinion.  The Court will therefore apply the "specific and legitimate" standard in this case. AR 14-17.

1    of the examining physician are not 'substantial evidence.'"  Orn, 495 F.3d at 632.

2          Treating physicians' subjective judgments are important, and "properly play a part in their

3    medical evaluations."  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  "The ALJ must

4    explain his own interpretations, and cannot merely list contrary opinions when stating that a

5    treating physician's opinion is unsupported."  Boardman v. Astrue, 286 F. App'x 397, 399-400

6    (9th Cir. 2008) (citing Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294 (9th Cir.

7    1999)).  If the ALJ fails to provide adequate reasons for rejecting a treating or examining

8    physician's opinion, the Ninth Circuit credits the opinion as a matter of law.  Benecke v.

9    Barnhart, 379 F.3d 587, 594 (9th Cir. 2004).

10          2.      Jeff Jones, MD, Primary Care Physician

11                  a.  Relevant Background

12          Dr. Jeff Jones has been plaintiff's treating physician since 2003 in relation to a worker's

13   compensation claim for lumbar degenerative disk disease and radiculopathy.  See AR 760; see

14   also id. at 284-418, 653-58.  Dr. Jones's notes reveal the use of multiple prescription medications

15   including hydrocodone, Adipex P, Tizanidine, Ibuprofen, Promethazine, Neurontin and Xanax.

16   See, e.g., AR 287.  These notes reveal that prolonged standing or walking exacerbate plaintiff's

17   problems; that shorter work days allow for pain tolerance; that medication helps to control pain

18   and anxiety; that 5-hour workdays would be best to accommodate her impairments; and that a

19   return to work increases her pain.  Dr. Jones's examinations revealed pain over the right superior

20   rim of the pelvis, a gait favoring the right leg, and pain with lumbar extension.

21          In mid-2005 and mid-2006, Dr. Jones wrote multiple letters in regards to a decision by the

22   worker's compensation board to terminate pain medication.  See, e.g., AR 312, 393.  He noted

23   that plaintiff had been on a stable medication regimen that allowed her to function well, including

24   going to work without missing any days and improving her life overall.  He asked that plaintiff be

25   quickly returned to the medication so that she could return to the work force and get off disability.

26   He noted that the denial of her pain medication has resulted in a marked relapse with increasing

27   pain, increasing depression, and a marked decrease in her objective functioning without her

28   medication.  With the stoppage of her pain medication, Dr. Jones saw an increase in plaintiff's

1    pain levels and her level of depression.  See AR 389, 392.

2    On June 24, 2010, Dr. Jones completed a Physical Residual Functional Capacity

3    Questionnaire that identified plaintiff's limitations as of May 3, 2009.  AR 760-64.  He opined

4    that plaintiff was capable of low-stress jobs and that her work-related limitations include an

5    ability to sit a total of approximately four hours and stand/walk approximately two hours in an

6    eight hour workday, to rarely lift/carry ten pounds, and to rarely stoop or twist.  He noted that

7    plaintiff's pain increases with sitting, walking, standing, or increased activity, and that she could

8    sit for 20 minutes and stand for 15 minutes *at one time* before needing to get up or move around.

9    Dr. Jones further opined as follows: (1) plaintiff's impairments had lasted or could be

10   expected to last at least twelve months; (2) plaintiff is not a malingerer; (3) depression affects her

11   physical condition; (4) her pain or other symptoms would frequently interfere with the attention

12   and concentration needed to perform simple work tasks; (5) she would require a sit/stand option;

13   (6) she could frequently lift less than ten pounds; (7) she could occasionally climb stairs; (8) her

14   impairments are likely to produce both good and bad days; and (9) she would likely be absent

15   from work about three days a month due to her impairments.  Dr. Jones listed his clinical findings

16   and objective signs, including signs of pain with lumbar extension, a gait favoring the right leg,

17   positive straight leg raise testing, and observed tenderness over the right SI Joint.  Id.  He also

18   noted that plaintiff's prescribed pain medications caused plaintiff episodic drowsiness and nausea.

19        b.  Analysis

20   The ALJ rejected Dr. Jones's opinion as follows:

21        Dr. Jones' opinion is given reduced weight, as there are no
22        objective findings justifying the highly restrictive residual
         functional capacity.  Notably, Dr. Jones' opinion is inconsistent
23        with the evidence of record as a whole, including his own medical
         records.  In particular, in April 2007, when the claimant was
24        released to modified work duty, there were no weight restrictions
         and only a restriction precluding sitting for more than 2 hours
25        [Exhibit 2F185].  By May 7, 2007 there were no restrictions in
         place at all except a reduction in work hours to 5 hours per day
26        [Exhibit 2F183].  Additionally, despite Dr. Jones' assertion that the
         claimant is only able to sit for a maximum of 20 minutes, the
27        claimant demonstrated a much higher tolerance during lengthy
         psychological testing at the consultative examination by Dr. Kolin.

28        Further, Dr. Johnson's orthopedic evaluation found full 5/5 strength

12

1    in all four extremities as well as other objective findings
     demonstrating no limitations in ability to lift and/or carry.  Even the
2    claimant herself did not allege such extreme functional limitations
     in her Disability Report or Function Report.  Dr. Jones' opinion is
3    in conflict with the opinions of both consultative examiners and the
     objective findings.
4

5    AR 15-16.

6         While the ALJ first asserted that there are no objective findings to support Dr. Jones's

7    RFC, the Court notes that Dr. Jones's conclusions are based on plaintiff's history and pain

8    allegations, an x-ray, and hundreds of pages of treatment records evidencing an array of different

9    pain medications, steroid injections, aquatherapy, chiropractic care, and nucleoplasty.[7]  AR 330,

10   339, 403.  The Social Security regulations put medical evidence into two categories: "(1)

11   Objective medical evidence, that is, medical signs and laboratory findings; and (2) Other evidence

12   from medical sources, such as medical history, opinions, and statements about treatment."  20

13   C.F.R. §§ 404.1512(b), 416.912(b).  While Dr. Jones only wrote "history and pain" as his reasons

14   for his determination of plaintiff's functionality, the evidence of Dr. Jones's ongoing

15   examinations and treatment of plaintiff's condition are evidence supporting his medical opinion.

16   Thus, the ALJ erred in concluding that there are no objective findings in the record to support his

17   RFC assessment.

18        The ALJ also failed to present substantial evidence that Dr. Jones's opinion is inconsistent

19   with the record and his own findings.  The ALJ asserted that the inclusion of weight restrictions

20   in Dr. Jones's 2009 assessment compared with the absence of weight restrictions from April and

21   May 2007, and the fact that the only work restriction on the 2007 assessments was that plaintiff

22   could not work for more than five hours a day for four days per week was a reason to afford Dr.

23   Jones's opinion little weight.  AR 15-16.  But the Court does not find a significant discrepancy

24   that constitutes a specific, legitimate reason based on substantial evidence that would justify

25   _____

26   [7] Nucleoplasty therapy is a recently developed technique for the treatment of pain coming from a
     spinal disc.  A special probe is inserted into the spinal disc and is used to remove a small amount
     of disc tissue from the disc nucleus and then to applied controlled thermal energy or heat to the
27   disc.  This causes the pressure within the disc wall to decrease and allows the disc to bulge or
     protrude less. Disc Nucleoplasty, OhioHealth MedCentral Hospitals,
28   http://www.medcentral.org/Main/DiscNucleoplasty.aspx (last visited July 18, 2014, 3:17 p.m.).

13

1    discrediting Dr. Jones's opinion on this basis.  The Preliminary Physician Reports from May and

2    April 2007 actually provide that plaintiff can only work for five hours a day, four days per week.

3    AR 357.  The work hour limitations from April and May 2007 are the same as those from 2009.

4    While there is more detail in the 2009 report, this is easily explained by the fact that the form asks

5    more detailed questions whereas the Preliminary Physician Report only has a general section on

6    work restrictions.  Compare AR 357-58 with 760-64.  Furthermore, as plaintiff has degenerative

7    disk disease, increased pain over a two-year period is unsurprising and supports additional

8    restrictions on weight in the 2009 assessment.  The Ninth Circuit has held that "[c]onsistency

9    does not require similarity in findings over time despite a claimant's evolving medical status."

10   Orn, 495 F.3d at 634.  The difference between Dr. Jones' 2007 and 2009 evaluations reflects no

11   more than a deterioration of plaintiff's condition over time.  Accordingly, the ALJ failed to

12   identify evidence supporting an inconsistency between Dr. Jones's opinion and plaintiff's medical

13   records.  This was error.

14          The ALJ also erred in discrediting Dr. Jones's opinion that plaintiff could sit for twenty

15   minutes "at one time, e.g., before needing to get up, etc." as inconsistent with plaintiff's alleged

16   ability to sit for more than twenty minutes in Dr. Kolin's psychological examinations.  Because

17   Dr. Kolin was focused on plaintiff's mental functioning, the Court finds it highly unlikely that

18   this doctor would have commented on plaintiff's ability to sit without needing to get up.  Indeed,

19   Dr. Kolin did *not* so comment.  AR 684-90.  Accordingly, the Court finds that this was not a

20   specific and legitimate reason supported by substantial evidence for affording little weight to Dr.

21   Jones's opinion.

22          Finally, the ALJ noted that examination by Dr. Matthew Johnson "found full 5/5 strength

23   in all four extremities as well as other objective findings demonstrating no limitations in ability to

24   lift and/or carry."  AR 16.  Dr. Johnson's opinion, however, was based on a single examination

25   and a very limited review of plaintiff's medical records, including only a Social Security

26   questionnaire filled out by plaintiff and a note from Kaiser Permanente that did not mention any

27   orthopedic issues.  See AR 617-22.  Furthermore, examination by Dr. Johnson revealed decreased

28   lumbar lordosis, tenderness to palpation of the lumbar paravertebral musculatorure, and pain with

14

forward flexion and extension end-range of motion.  Dr. Johnson opined that "she has some objective findings to support her claim" and that her "[c]linical presentation is consistent with chronic lumbago, likely secondary to degenerative joint and disk disease.  Cannot rule out chronic radiculopathy at this time."

"The opinion of an examining physician who relies on the same clinical findings as a treating physician 'but differs only in his or her conclusions,' does not constitute substantial evidence." Evans v. Comm'r of Soc. Sec. Admin., 320 Fed. Appx. 593, 595 (9th Cir. 2009). Because both Dr. Johnson and Dr. Jones found that plaintiff has degenerative disk disease and because Dr. Johnson was unable to rule out radiculopathy, there is no inconsistency between the two findings, only a difference in the conclusions drawn from said findings.  Dr. Johnson's evaluation thus does not substantively contradict that of Dr. Jones.  While there are some differences in restrictions, these only constitute differences in conclusions, which are not sufficient to discount a treating physician's opinion.  Moreover, the different conclusions can easily be explained by the brief nature of Dr. Johnson's evaluation.  Lastly, there is no evidence that Dr. Johnson performed any tests that required plaintiff to lift any amount of weight, which would mean that his weight restrictions are merely conjecture.  See AR 684-90.

For all these reasons, the Court finds that the ALJ has failed to provide specific, legitimate reasons supported by substantial evidence for discounting Dr. Jones's opinion.

       3.    <u>Karen Mark, MD, HIV Treating Physician</u>

           a.  <u>Relevant Background</u>

Dr. Karen Mark is an HIV specialist certified in infectious diseases and internal medicine, recognized by the ALJ as plaintiff's HIV treating physician.  AR 17.  Dr. Mark has been plaintiff's primary HIV doctor since summer/fall 2010.  AR 701-05; see also 707-53.  On March 28, 2011, Dr. Mark completed a physical RFC questionnaire regarding plaintiff's diagnoses of HIV and depression, also noting that plaintiff has an additional diagnosis of "back pain managed by another physician."  Dr. Mark opined that plaintiff had no symptoms from HIV except for nausea from the HIV and pain medications, and that plaintiff had a depressed mood and chronic back pain.  She further opined that plaintiff is incapable of even a low stress job "due to patient's

1   current depression." She left the section blank on plaintiff's physical functional limitations in the

2   workplace and wrote a note stating that this is "better answered by patient's back doctor." Dr.

3   Mark also noted that plaintiff is likely to be absent from work about two days per month "for HIV

4   and depression related medical appointments—This does not take into consideration patient's

5   back condition."

6           b.   Analysis

7           The ALJ discounted Dr. Mark's opinion because HIV is the "only diagnosed condition

8   managed by Dr. Mark, [and] she admitted the claimant has a good prognosis for her HIV

9   condition with no symptoms from HIV except nausea due to HIV medications." AR 17. He

10   further concluded:

11

12           Dr. Mark's opinion is given reduced weight as the RFC assessment
            is based entirely on conditions Dr. Mark is neither providing
13           treatment for nor qualified to offer an opinion on, as it is outside her
            area of practice and specialty. Moreover, Dr. Mark's opinion is
14           quite conclusory, providing very little detail as to the evidence
            relied on in forming this opinion and the level of severity of being
15           incapable of even low stress jobs is neither supported by nor
            consistent with the other substantial evidence of record.

16   AR 17.

17           As to the ALJ's assertion that Dr. Mark's opinion is "quite conclusory," the Ninth Circuit

18   has found that a treating physician's statement that the claimant:

19           [W]ould be 'unlikely' to work full time was not a conclusory
            statement like those described in 20 C.F.R. § 404.1527(d)(1), but
20           instead an assessment, based on objective medical evidence, of
            [claimant]'s likelihood of being able to sustain full time
21           employment given the many medical and mental impairments
            [claimant] faces and her inability to afford treatment for those
22           conditions.

23   Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012). Though the ALJ discounted Dr. Mark's

24   opinion about plaintiff's ability to work, stating that his opinion is conclusory, the symptoms

25   outlined by Dr. Mark in both her notes and the assessment of anxiety, depressed mood, fatigue,

26   and nausea all support her findings. As the Ninth Circuit decided in Hill, this type of opinion is

27   not considered summary or conclusory. Hill, 698 F.3d at 1160.

28

1    With respect to the ALJ's claim that Dr. Mark's opinion is inconsistent with substantial

2    evidence in the record, the ALJ failed to specify the evidence of record to which he was referring.

3    Furthermore, the ALJ failed to address the fact that Dr. Mark had treated plaintiff for both HIV

4    and depression, as evidenced by the fact that on March 14, 2011, plaintiff's reasons for her visit

5    with Dr. Mark were both an HIV follow-up and for plaintiff's depression.  AR 707.  Dr. Mark

6    also reviewed all of plaintiff's medications at this visit, including those related to her mental state.

7    AR 708.  Furthermore, she discussed plaintiff's depression with her and the "importance of

8    patient thinking of things to do to give meaning to her life."  AR 708.  Dr. Mark addressed

9    depression as a reason for plaintiff's appointments, in addition to HIV, as far back as July 10,

10   2010, at which time Dr. Mark described that associated symptoms with her HIV diagnosis were

11   "anxiety, depressed mood, fatigue, nausea."  AR 737.  Therefore, this does not constitute a

12   specific legitimate reason supported by substantial evidence that warrants discounting Dr. Mark's

13   opinion.

14   The ALJ further erred in giving reduced weight to Dr. Mark's opinion because she does

15   not specialize in psychiatry.  The Ninth Circuit has found that it is "clearly erroneous" for the

16   ALJ to require that evidence of the psychological impact of a disease be from a psychiatrist, as

17   there "is no such requirement in the regulations."  Sprague v. Bowen, 812 F.2d 1226, 1232 (9th

18   Cir. 1987).  "Under general principles of evidence law [a licensed treating physician] is qualified

19   to give a medical opinion as to [claimant]'s mental state as it relates to her physical disability

20   even though [the treating physician] is not a psychiatrist."  Id.  Here, Dr. Mark's opinion of

21   plaintiff's psychological limitations resulting from her underlying HIV diagnosis is a pertinent

22   observation that the ALJ should have afforded more weight.  Moreover, as an infectious disease

23   specialist who has dedicated her career to helping patients diagnosed with HIV and AIDS, Dr.

24   Mark is particularly well-equipped to recognize the psychological effects of an HIV diagnosis on

25   a patient and the corresponding limitations that come with such psychological effects.  See Karen

26   E. Mark, MD, MPH, Chief, Office of Aids, California Department of Public Health (June 21,

27   2013, 11:10 AM), http://www.cdph.ca.gov/programs/aids/Pages/OAChiefBio.aspx.  Therefore,

28   the ALJ erred in giving reduced weight to Dr. Mark's functional assessment.

1        4.      Jeffrey Gerstein, MD, Treating Psychiatrist

2            a.   Relevant Background

3        Dr. Jeffrey Gerstein is plaintiff's treating psychiatrist, who began treating plaintiff on

4  October 19, 2010 upon referral from Dr. Mark.  See AR 737.  Dr. Gerstein treated plaintiff once

5  every six weeks.  AR 693.  On March 15, 2011, Dr. Gerstein completed a mental RFC assessment

6  on plaintiff's behalf.  AR 693-94.  On the mental RFC, Dr. Gerstein indicated diagnoses of Major

7  Depression—recurrent and severe—and a generalized anxiety disorder with a current GAF score

8  of 46.[8]  He described plaintiff's signs and symptoms as "severe depressed mood, hopeless,

9  anxious, suicidality."  Dr. Gerstein indicated that plaintiff had a fair ability to follow work rules

10  and to maintain her appearance but had fair to poor ability to demonstrate reliability.  He also

11  indicated that she had poor or no ability to adjust to a job— specifically including relating to

12  coworkers, dealing with the public, using judgment, interacting with supervisors, dealing with

13  work stressors, functioning independently, and maintaining attention/concentration.  He opined

14  that plaintiff would miss work more than three times per month because of her condition, and that

15  she had poor or no ability to work because she is unable to understand, remember, and carryout

16  even simple job instructions.  He further opined that plaintiff had poor or no ability to behave in

17  an emotionally stable manner or relate predictably in social situations.  He summed up his

18  assessment with the conclusion that plaintiff is "globally impaired due to depression."

19            b.   Analysis

20        The ALJ gave Dr. Gerstein's opinion "little weight as it is not well-supported by objective

21  findings and is entirely inconsistent with the other evidence of record as a whole, including the

22  opinions of Dr. Kolin and Dr. Johnson who both personally examined the claimant and failed to

23

24  _____

[8] GAF stands for Global Assessment of Functioning and is a test that uses a one hundred point
25  scale to measure a patient's overall level of psychological, social, and occupational functioning
    on a hypothetical continuum.  David B. Freeman, PhD, Global Assessment of Functioning (GAF)
26  Scale, Comprehensive Psychological Services, Inc., http://www.cpspsych.com/wp-
    content/uploads/2011/04/Screen-Shot-2013-09-19-at-9.42.43-AM.png (last visited July 17, 2014,
27  3:32 PM).  A GAF score of 46 indicates "[s]erious symptoms (e.g. suicidal ideation,
    severe/obsessive rituals, frequent shoplifting) OR any serious impairment in social, occupational,
28  or school functioning (e.g. no friends, unable to keep job)."  Id.

1    recognize the complete deterioration of mental ability that Dr. Gerstein is suggesting."  AR 17.

2          The ALJ first asserted that Dr. Gerstein's opinion was not well-supported by objective

3    evidence.  However, "objective demonstrability is not the correct standard to be applied in

4    evaluating evidence of mental disorders."  Christensen v. Bowen, 633 F. Supp. 1214, 1220 (N.D.

5    Cal. 1986).  A District Court in the Northern District of California has explained that:

> Courts have recognized that a psychiatric impairment is not as
> readily amenable to substantiation by objective laboratory testing as
> is a medical impairment and that consequently, the diagnostic
> techniques employed in the field of psychiatry may be somewhat
> less tangible than those in the field of medicine. In general, mental
> disorders cannot be ascertained and verified as are most physical
> illnesses, for the mind cannot be probed by mechanical devises in
> order to obtain objective clinical manifestations of mental illness. A
> strict reading of the statutory requirement that an impairment to
> 'demonstrable by medically acceptable clinical and laboratory
> diagnostic techniques,' 42 U.S.C. §§ 423(dX3), 1382c(a)(3)(C), is
> inappropriate in the context of mental illness. Rather, when mental
> illness is the basis of a disability claim, clinical and laboratory data
> may consist of the diagnoses and observations of professionals
> trained in the field of psychopathology. The report of a psychiatrist
> should not be rejected simply because of the relative imprecision of
> the psychiatric methodology or the absence of substantial
> documentation, unless there are other reasons to question the
> diagnostic technique.

16   Lebus v. Harris, 526 F. Supp. 56, 60 (N.D. Cal. 1981) (citations omitted); see also Taddeo v.

17   Richardson, 351 F. Supp. 177, 180 (C.D. Cal. 1972).  Dr. Gerstein's notes document persistent

18   depression, sleep difficulties, suicidality, only minimal to moderate improvement with medication

19   despite compliance, and diagnoses consistent with those reported by Dr. Kolin, the examining

20   psychologist.  AR 713-14, 719-20.  Furthermore, Dr. Gerstein's evaluation is consistent with

21   plaintiff's GAF score and the opinion of another treating physician who was focused on

22   plaintiff's depression symptoms, Dr. Mark.  Thus, simply stating that Dr. Gerstein's opinion is

23   not-well supported by evidence is an insufficient basis for dismissing his opinion.

24         Next, the ALJ asserted that Dr. Gerstein's opinion is inconsistent with the other evidence

25   on the record, including the two examining physicians' opinions, Dr. Kolin and Dr. Johnson.  The

26   ALJ failed to point to any evidence on the record that supports his finding that Dr. Gerstein's

27   opinion is "entirely inconsistent with the other evidence of record as a whole."  AR 17.  The ALJ

28   cannot discount a treating physician's opinion merelu because it varies from an examining

19

1  physician's opinion.  "The ALJ must explain his own interpretations, and cannot merely list

2  contrary opinions when stating that a treating physician's opinion is unsupported."  Boardman,

3  286 Fed. Appx. at 399-400 (citing Regennitter, 166 F.3d 1294).  Moreover, one of the examining

4  physician's mentioned, Dr. Johnson, only completed a physical RFC assessment and specializes

5  in orthopedics.  AR 617-29.  Thus, his assessment has no bearing on plaintiff's mental state and

6  its effects on her ability to function in a workplace.

7      Furthermore, given the nature of plaintiff's diagnosis and her documented ups and downs,

8  the one-time evaluation of psychologist Dr. Kolin is insufficient evidence for rejecting a treating

9  psychiatrist's opinion.  Dr. Kolin found in his examination that plaintiff was mildly impaired in

10  her: (1) "ability to understand, remember, and carry out job instructions;" (2) "ability to maintain

11  attention, concentration, persistence, and pace;" (3) "ability to relate and interact with

12  supervisors, co-workers, and the public;" and (4) "ability to adapt to day to day work activities,

13  including attendance and safety."  AR 688.  The symptoms documented by Dr. Kolin are the

14  same symptoms documented by Dr. Gerstein, the only difference between the opinions is the

15  degree of the symptoms and their personal opinions about how much these symptoms impact

16  plaintiff's ability to work.  Furthermore, Dr. Kolin noted in his medical source statement that "the

17  above findings are based on information gathered during a one time, limited psychological

18  evaluation and testing session at the request of the Department of Social Services . . . [and] is not

19  meant to be a comprehensive psychological evaluation."  AR 689.  He further stated, "[t]he

20  findings are limited by the validity of the test results, observations, review of records and

21  interaction with the claimant on the date of the evaluation only."  Id.  Accordingly, merely stating

22  that Dr. Gerstein's opinion conflicts with this examining opinion is not sufficient to reject Dr.

23  Gerstein's opinion as a treating physician.  The ALJ failed to present specific, legitimate reasons

24  for rejecting Dr. Gerstein's opinion.

25      In sum, the Court finds that the ALJ failed to provide specific, legitimate reasons

26  supported by substantial evidence for discounting the opinions of plaintiff's treating physicians.

27  ////

28  ////

1    C.    Lay Evidence of Record

2          1.    Relevant Background

3          Plaintiff's sister, Cynthia T'Souvas, completed two 3rd Party Function Reports, dated

4    November 16, 2009 and July 20, 2010, in which she discussed plaintiff's limitations caused by

5    pain.  She discussed plaintiff's difficulty sleeping due to constant pain; the fact that plaintiff takes

6    longer to care for her personal needs; she can prepare simple foods for herself daily, but some

7    days cannot prepare food due to her pain; she has stopped going to church because the pews hurt

8    her back; and it is sometimes hard for plaintiff to tolerate people due to her pain and limitations.

9    AR 160-67, 192-99.

10         On March 29, 2011, Cynthia T'Souvas also submitted a letter in support of plaintiff's

11   application for benefits.  AR 273-74.  In her statement, plaintiff's sister gave a detailed account of

12   her observations of plaintiff's condition, describing that plaintiff had "gotten worse and worse"

13   for the past several years and that plaintiff is in too much pain to spend time with family or

14   friends, travel, and sometimes even to walk from her room to the living room.  She stated that

15   plaintiff tries to do "normal stuff like doing errands, etc and has to come home early because she

16   was in too much pain."  Cynthia T'Souvas also went into detail about plaintiff's pattern of

17   sleepless nights due to back and nerve pain, explaining that every night she hears plaintiff in the

18   kitchen at all hours using the microwave to heat a heating pad or making toast or cereal because

19   she needs to take more medication for the pain and can't take the medication on an empty

20   stomach.  Her statement also described the changes in plaintiff's personality due to her pain

21   including irritability; an increased stress level; and that plaintiff often cries, expresses feeling

22   hopeless, and talks about committing suicide.  Finally, plaintiff's sister opined that plaintiff

23   experiences bad days with her pain level more than eighty-five percent of the time and that it

24   would be impossible for plaintiff to have a job "because her days and pain intensities change

25   without notice from moment to moment."

26         2.    Analysis

27         "In determining whether a claimant is disabled, an ALJ must consider lay witness

28   testimony concerning a claimant's ability to work."  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th

1  Cir. 2009) (citing Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006); see also 20 C.F.R. §§

2  404.1513(d)(4), (e)).  "Such testimony is competent evidence and 'cannot be disregarded without

3  comment.'"  Bruce, 557 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.

4  1996)).  Ninth Circuit found that "friends and family members in a position to observe a

5  claimant's symptoms and daily activities are competent to testify as to her condition."  Dodrill, 12

6  F.3d at 918-19 (citing Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)).  While the ALJ

7  may discount lay testimony that conflicts with medical evidence, it is an error to reject or ignore

8  lay testimony solely because it is not supported by medical evidence.  See Evans v. Comm'r of

9  Soc. Sec. Admin., 320 Fed. Appx. 593, 596 (9th Cir. 2009); Massey v. Comm'r of Soc. Sec.

10  Admin., 400 Fed. Appx. 192, 194 (9th Cir. 2010).  Furthermore, the ALJ must consider all

11  evidence, including lay witness testimony, in determining claimant's ability to work.  Dodrill, 12

12  F.3d at 919 (finding "'[d]isregard of this evidence violates the Secretary's regulation that he will

13  consider observations by non-medical sources as to how an impairment affects a claimant's ability

14  to work. 20 C.F.R. § 404.1513(e)(2).'" (quoting Sprague, 812 F.2d at 1232)).  "If the ALJ wishes

15  to discount the testimony of the lay witnesses, he must give reasons that are germane to each

16  witness."  Id.

17          In this case, the ALJ considered only Cynthia T'Souvas's 3rd Party Adult Function

18  Reports, rejecting them as merely duplicative of plaintiff's testimony.  AR 14.  The ALJ failed,

19  however, to discuss the detailed statement submitted by plaintiff's sister concerning the extent of

20  plaintiff's allegations of pain.  Defendant argues that any error in this case was harmless.  See

21  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  In Molina, the Ninth Circuit held that

22  "[w]here lay witness testimony does not describe any limitations not already described by the

23  claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply

24  equally well to the lay witness testimony, it would be inconsistent with our prior harmless error

25  precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se."

26  674 F.3d at 1117.  In that case, the Court of Appeals found that "[a]lthough the ALJ erred in

27  failing to give germane reasons for rejecting the lay witness testimony, such error was harmless

28  given that the lay testimony described the same limitations as [the claimant's] own testimony, and

1    the ALJ's reasons for rejecting [that] testimony appl[ied] with equal force to the lay testimony."

2         Here, the undersigned has found that the ALJ provided only one proper reason for

3    discrediting plaintiff's credibility—that related to plaintiff's reason for being terminated from her

4    job.  Since this reason does not apply "with equal force" to Cynthia T'Souvas's statement, the

5    Court finds that the ALJ erred in failing to give a reason germane to this witness in failing to

6    consider her March 2011 letter.  Accordingly, the ALJ erred in this regard.

7    D.    Remand

8         Plaintiff asserts that this matter should be remanded for immediate payment of benefits

9    rather than further proceedings.  A remand for further proceedings is unnecessary if the record is

10   fully developed, and it is clear from the record that the ALJ would be required to award benefits.

11   Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  The decision whether to remand for

12   further proceedings turns upon the likely utility of such proceedings.  Barman v. Apfel, 211 F.3d

13   1172, 1179 (9th Cir. 2000).  In this matter, this Court concludes that outstanding issues remain

14   that must be resolved before a determination of disability can be made.  Pursuant to this remand,

15   the ALJ shall properly consider the opinions of plaintiff's treating physicians and shall properly

16   consider the lay evidence of record.  Because remand is appropriate on these grounds, the Court

17   declines to consider plaintiff's final argument that the ALJ erred by failing to rely upon the

18   vocational expert testimony tendered in response to a complete hypothetical question.

19        Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

20   1.    Plaintiff's motion for summary judgment (ECF No. 17) is granted in part;

21   2.    The Commissioner's cross-motion for summary judgment (ECF No. 24) is denied;

22   and

23   3.    This matter is remanded for further proceedings consistent with this order.

24   DATED: August 15, 2014

25

         ALLISON CLAIRE
26       UNITED STATES MAGISTRATE JUDGE

27

28